[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14847
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00604-JHE

SHANNON WELLS,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 21, 2019)

Before TJOFLAT, WILLIAM PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

Shannon Wells appeals the denial of her application for disability insurance

benefits and supplemental security income. 42 U.S.C. §§ 405(g), 1383(c)(3). Wells

argues that the administrative law judge gave insufficient weight to the opinions of her treating physician, Dr. Odeane Connor, and of a consulting psychiatrist, Dr. Jack Bentley; failed to develop the record regarding the side effects of her pain medication; and was biased. Wells also argues that the Appeals Council failed to consider medical records prepared after her administrative hearing. We affirm.

Good cause supports the administrative law judge's decision to give little weight to Dr. Connor's medical questionnaire. Dr. Connor completed the form on March 18, 2014, which predated the onset date of Wells's disability on August 11, 2014. *See* 20 C.F.R. § 404.1527(c). The doctor also noted that Wells "needs [a] F[unctional] C[apacity] E[valuation]." *See Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (discounting opinion when the treating physician "is unsure of the accuracy of his findings and statements"). Dr. Connor marked boxes stating that Wells was limited in her abilities to bend, concentrate, lift objects, perform manual tasks, stand, walk, and work, but the doctor's medical records stated that the range of motion in Wells's back fluctuated between normal and moderately impaired, she tested negative on straight leg tests and sciatic stretch tests, she had a normal tone, and she benefitted from medication without side effects. *See id.* (discounting opinion that conflicts with treatment records). The limitations that Dr. Connor marked also conflicted with Dr. Bentley's medical

2

notes that Wells ambulated with little difficulty and completed tasks daily without assistance despite her pain and Dr. Sathyan Iyer's notes that Wells could stand without assistance, walk on her tiptoes, squat partially, had normal muscle power in her upper and lower extremities, and had a full range of motion in her hips, knees, and ankles. Substantial evidence supports the administrative law judge's decision to discount Dr. Connor's questionnaire.

Substantial evidence also supports the administrative law judge's decision to discount Dr. Bentley's opinion that Wells was mentally disabled. The administrative law judge was entitled to give little weight to an opinion formed after one examination, *see* 20 C.F.R. § 404.1527(c)(2), based largely on Wells's subjective complaints, *see id.* § 404.1527(c)(3), which conflicted with Dr. Bentley's medical notes, *see id.* § 416.927(c)(4). Dr. Bentley's diagnosis that Wells had bipolar disorder was inconsistent with his findings that Wells was "at most, mildly despondent over her chronic pain and loss of lifestyle" and lacked symptoms of the disorder. The doctor's diagnosis that Wells had depressive disorder conflicted with his observations that Wells's mood was "reasonably cheerful and congruent with her affect," she exhibited no obvious signs of anxiety or restlessness, she was "reasonably stable" on her psychiatric medications, and her prognosis was "favorable." And Dr. Bentley's conclusion that Wells had a

3

"marked limitation in her ability to sustain complex or repetitive work related activities" conflicted with his records that she successfully completed the recollection, mathematical, and spelling tests that he administered.

The administrative law judge developed a full and fair administrative record regarding the effects of Wells's pain medication. Wells testified that the methadone she took for pain and the Lyrica she took for fibromyalgia made her sleepy and, when asked by counsel whether her medicines caused dizziness, Wells responded that she fell asleep in her car during two lunch breaks. The administrative law judge took into account Wells's statements to Dr. Connor and Dr. Huma Khusro, a psychiatrist who evaluated Wells twice, that her medications had minimal to no side effects. In *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981), we held that a claimant's hearing was procedurally deficient when she was unrepresented and the administrative law judge failed to question her after she testified that her seven medicines caused her to be "kind of zonked most of the time." *Id.* at 737. Unlike the claimant in *Cowart*, Wells had counsel to assist her in developing her case and she never testified or argued that the side effects of her medicines were disabling. The administrative law judge's "failure to inquire further into possible side effects did not deprive [Wells] of a meaningful

4

opportunity to be heard." *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (distinguishing *Cowart*).

Wells's argument that the administrative law judge was biased against her fails. The administrative law judge plays a "crucial role in the disability review process" and his impartiality is "integral to the integrity of the system." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). Because we presume that the administrative law judge is unbiased, "the burden of establishing a disqualifying interest rests on [Wells]." *Schweiker v. McClure*, 456 U.S. 188, 195–96 (1982). In other words, Wells has to "overcome a presumption of honesty and integrity in . . . [his] adjudicator[] [by presenting evidence to] convince that, under a realistic appraisal of psychological tendencies and human weakness, . . . [the] individual[] poses such a risk of actual bias or prejudgment that the practice must be forbidden . . . ." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Wells argues that the administrative law judge has a low rate of favorable decisions and has been reversed by the district court, but Wells acknowledges "that statistics alone are not evidence of bias." Wells also argues that the administrative law judge substituted his opinion for that of Dr. Connor and Dr. Bentley, but substantial evidence supports the decisions to discount the doctors' opinions. Wells identifies no ruling or other evidence in the record establishing any partiality on the part of or a

5

specific reason to disqualify the administrative law judge. The administrative law judge's decision reflects no bias.

The Appeals Council committed no error when considering records of Dr. Connor from the "Pain and Wound Care Center dated August 31, 2015 through November 2, 2015," "Records from Rehab Partners dated May 12, 2009 through January 19, 2011," and the "Statement from Fredrick Feist, M.D., dated February 20, 2016." The Appeals Council ruled summarily that the new records did "not provide a basis for changing the Administrative Law Judge's decision." *See Mitchell v. Comm'r*, 771 F.3d 780, 784 (11th Cir. 2014). The records from Dr. Connor and Rehab Partners contained substantially the same information and were copies of reports that the administrative law judge reviewed. *See id.* Dr. Feist's statement was a questionnaire on which he circled yes or no and provided no explanation to support his answers that Wells was unable to work. *See Edwards*, 937 F.2d at 583.

Wells's additional evidence was not chronologically relevant. Records of Preferred Pain Associates from April 7, 2016, to June 30, 2016, of Rapid Care Medical Clinic from February 5, 2016, to April 11, 2016, and from Dr. Connor at the Pain and Wound Care Center on December 1, 2015, were prepared after the administrative law judge denied Wells's application on November 20, 2015. *See* 20

6

C.F.R. § 404.970(c). Those treatment records also were not relevant to the period preceding the administrative law judge's decision. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309–10 (11th Cir. 2018). Preferred Pain Associates reported continuing treatment for and adjustments to medicines for Wells's pain, and Dr. Connor reported an additional therapy session with Wells and her dismissal as a patient. In contrast to *Washington v. Social Security Administration*, 806 F.3d 1317, 1322–23 (11th Cir. 2015), where a new psychological report was chronologically relevant because its opinion that the claimant was disabled was based on earlier treatment records of his auditory and visual hallucinations, the additional medical records from Preferred Pain and Dr. Connor do not contain new findings about Wells's condition. And Wells's medical records from Rapid Care Clinic suffer the same fate because they reported treatment for an injury Wells sustained after the administrative law judge's decision.

We **AFFIRM** the denial of Wells's application for benefits.

7

JORDAN, Circuit Judge, concurring.

Certain things gave me initial pause – the ALJ's low approval rate for claimants; the Appeals Council's failure to address the issue of alleged bias on the part of the ALJ; and the number of district court opinions critical of the ALJ's decisions. In the right case, these matters may warrant further inquiry. But in this particular case, I conclude that the ALJ had valid reasons for discounting the opinions of Drs. Conner and Bentley. I therefore concur in and join the court's opinion.